Filed 7/27/22  In re W.D. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re W.D., a Person Coming Under the Juvenile Court Law. | |
| | D080180 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520907) |
| v. | |
| M.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Conditionally reversed and remanded with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

M.D. (Mother) appeals from the juvenile court's jurisdictional and dispositional order removing her baby, W.D., from her custody. Mother's only contention on appeal is that the San Diego County Health and Human Services Agency (Agency) failed to comply with the initial inquiry requirements under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare and Institutions Code section 224.2, subdivision (b).[1] The Agency concedes that its initial inquiry was inadequate. We agree. Therefore, we conditionally reverse the jurisdictional and dispositional order, and remand the matter for the limited purpose of compliance with ICWA.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In November 2021, the Agency petitioned the juvenile court under section 300, subdivision (b), on behalf of newborn baby W.D. The Agency alleged that Mother was incapable of providing regular care for W.D. because that month, Mother presented with a psychotic disorder and was placed on a psychiatric hold, and also had tested positive for methamphetamine. The petition included a statement on Judicial Council form ICWA-010(A) that a social worker had not yet asked about W.D.'s Indian status because Mother was mentally unstable and presented with psychotic thinking, paranoia, hallucinations, and delusions.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] Due to the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issue on appeal.

2

At the detention hearing, the court deferred making a finding under ICWA due to its inability to communicate with Mother and her refusal to accept court-appointed counsel.

The Agency's jurisdiction/disposition report indicated that maternal grandmother denied any Native American ancestry for herself, her family, or Mother, as well as denied any Native American history for her ex-husband (maternal grandfather), whom maternal grandmother noted had not been involved in Mother's life.  Maternal grandmother also informed the Agency of her husband (maternal step-grandfather) and Mother's half-sister (maternal half-aunt).  When asked if there were any other relatives the Agency should contact, maternal grandmother said no and that they had a small family.

The report also indicated that Mother had identified W.D.'s father by name but had declined on multiple occasions to provide any additional identifying information.  That limited information was not enough for the Agency to conduct a parent search for the father.  Mother later told the Agency that she did not recall saying he was the father and did not know who that person was.

The Agency attached to its court report various documents from maternal grandmother about Mother's treatment history, including a document that provided a phone number for maternal grandfather.  The Agency concedes that it did not contact him.

At a January 2022 hearing, Mother's counsel informed the court for the first time that Mother told him "she might have some Navajo ancestry."  The court then asked maternal grandmother (who was present at the hearing) if she was aware of any Native American ancestry on Mother's maternal side of the family.  Maternal grandmother responded, "no Navajo" and "[a]bsolutely not."  The court then concluded there was no Native American ancestry and

"no further information available as to any potential information as to Native American history."

A few days later, the Agency sent an informal inquiry letter to the Navajo Nation. The letter identified W.D., Mother, and someone erroneously designated as W.D.'s "paternal grandfather,"[3] and stated that the family was reporting "possible Navajo heritage through the paternal grandfather's side of the family."

By the time of the contested jurisdiction and disposition hearing, the Agency had not received a response from the Navajo Nation. At the hearing, maternal grandmother reiterated that she was not aware of any Native American history in Mother's background or maternal grandfather's background, and she noted that Mother told her W.D.'s father was Mexican.

After hearing argument, the court sustained the allegations of the petition under section 300, subdivision (b); declared W.D. a dependent; removed W.D. from Mother's custody under section 361, subdivision (c); and ordered reunification services for Mother. The court found without prejudice that ICWA does not apply.

Mother appealed, challenging only the court's initial inquiry finding under ICWA.

## DISCUSSION

Mother argues that the Agency and court failed to comply with ICWA requirements because there is no evidence that the Agency made ICWA inquiries of any family members other than Mother and maternal grandmother. Specifically, Mother contends that the Agency failed to ask (1) maternal grandfather, (2) maternal step-grandfather (maternal

---

[3] The record indicates that W.D.'s Father and paternal relatives are unknown.

4

grandmother's husband, who is not biologically related to Mother), and (3) maternal half-aunt (for whom Mother contends the Agency could have potentially obtained contact information from maternal grandmother's husband).

The Agency concedes that it failed to satisfy its initial inquiry obligations under ICWA by not contacting maternal grandfather, and that we should reverse the court's ICWA finding and remand. We agree. Substantial evidence does not support the juvenile court's findings that the Agency complied with its inquiry obligations and that ICWA does not apply. Therefore, we conditionally reverse and remand for the limited purpose of requiring compliance with ICWA.

## A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9.) An " 'Indian child' " is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved

5

persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent[.]" (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

### B. Analysis

The juvenile court's finding that ICWA was inapplicable implied that the court and the Agency fulfilled its inquiry duty. (See *In re Austin J.* (2020)

6

47 Cal.App.5th 870, 885 [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) But the record does not support that finding.[4]

Indeed, the Agency concedes that its initial ICWA inquiry was deficient because it failed to ask maternal grandfather—for whom it had a telephone number and name—whether W.D. is or may be an Indian child. We agree.[5] Because maternal grandfather qualifies as an extended family member under ICWA, the Agency was required to ask him about W.D.'s potential Indian ancestry, and the juvenile court had to ensure this inquiry took place before it could find ICWA did not apply. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048– 1049.)

We reject, however, Mother's challenge regarding maternal step-grandfather and maternal half-aunt. The Agency was not necessarily obligated to ask these individuals because the definition of "extended family member" does not include step-grandparents or half-aunts. (See 25 U.S.C.

---

[4] Because we conclude that the initial inquiry was inadequate, we need not reach Mother's alternative argument that, even if we found the initial inquiry to be sufficient, the Agency failed to report on its inquiry and investigation.

[5] Although somewhat unclear, the parties both appear to raise the sufficiency of a further inquiry. For example, the Agency observes that its letter to the Navajo Nation erroneously claimed that W.D. might have Navajo heritage on the *paternal* side, rather than the maternal one, and that this must be rectified on remand. Meanwhile, Mother suggests for the first time in her reply brief that her statement about the potential for W.D.'s Navajo ancestry raised a "reason to believe" requiring a further inquiry. Because we conclude that the *initial* inquiry was insufficient, however, we need not reach the adequacy of a further inquiry.

§ 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Because the failure here concerns the Agency's duty of initial inquiry under section 224.2, subdivision (b), only state law is involved.  Therefore, we may not reverse unless the error was prejudicial.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin*).)  That is, any error " 'must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error.' " (*In re A.M.* (2020) 47 Cal.App.5th 303, 318.)

This district recently set forth a standard for applying the prejudicial error requirement in ICWA cases:  "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. . . .  Under this approach, we require continued inquiry where the probability of obtaining meaningful information is reasonable in the context of ICWA."  (*Benjamin, supra,* 70 Cal.App.5th at p. 744.)

In *Benjamin*, the appellate court conditionally reversed the juvenile court's order because the agency failed to obtain information that was readily available and "potentially meaningful."  (*Benjamin, supra,* 70 Cal.App.5th at p. 744.)  There, the agency was not able to locate the father and did not obtain any information about Indian ancestry from the minor's paternal side. (*Id.* at p. 740.)  Although the agency had access to the father's brother, it failed to ask him about potential Indian ancestry.  (*Id.* at p. 744.)  In concluding that this error was prejudicial, the appellate court reasoned that "Father's brother's knowledge of his own Indian status would be suggestive of Father's status.  While we cannot know how Father's brother would answer

8

the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother." (*Id.* at p. 745.)

Similarly, here, the Agency had access to maternal grandfather but failed to ask him about potential Indian ancestry. Because maternal grandfather's knowledge of his own Indian status is likely to bear meaningfully on the determination about W.D., the Agency's failure to make that inquiry was prejudicial.[6]

---

[6] As raised by both parties, we also note that an ICWA-020 form is not in the record, and it appears that the juvenile court never ordered Mother to complete the form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

## DISPOSITION

The juvenile court's jurisdiction and disposition order is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2. If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that W.D. is an Indian child, the orders issued at the jurisdiction and disposition hearing shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know that W.D. is an Indian child, the juvenile court shall proceed accordingly.


HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

10